UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

SHELBY LEARY, Commissioner,
State of West Virginia,
Division of Labor, on behalf of
DAVID BELCHER, CALVIN CHEEKS,
JEFFREY CHEEKS, RANSOME MITCHEM,
JOHNNY BROWN, DAVID DENTON,
DAVID HAGERMAN, HARLIN HAGERMAN,
ROBERT HILL, STEPHEN O'DELL,
BERNARD SIMPSON, IRA SIMPSON,
CLAUDE SMITH, and ANTHONY TAYLOR,



Plaintiff

v.  Civil Action No. 2:93-1191

BLUESTONE COAL CORPORATION,

Defendant

### MEMORANDUM ORDER

This matter is before the court on the motion for summary judgment deemed submitted by the defendant Bluestone Coal Corporation on September 2, 1994.[1]

---

[1] The motion as initially filed on May 24, 1994, sought summary judgment on the basis of matters deemed admitted when plaintiff failed to timely respond to a request for admissions. By order entered on March 28, 1995, the motion was denied as moot, the court having granted plaintiff additional time within which to respond to the request for admissions. In that same order, the court deemed the May 24, 1994, motion for summary judgment as resubmitted on September 2, 1994, the date on which Bluestone, in accordance with the court's directive, filed a supplemental memorandum which does not rely on the deemed admissions as the basis for summary judgment in its favor.

I.

Plaintiff's complaint[2] was brought pursuant to the West Virginia Wage Payment and Collection Act, W. Va. Code §§ 21-5-1 through 21-5-18, on behalf of twenty-six individuals who were former employees of BBC Coal Company, Inc., Thurman Coal Company, Inc., Greyhead Mining Company, and C & O Mining. The claims brought on behalf of employees of Thurman and Greyhead were dismissed by orders entered on August 18, 1994, and March 22, 1995. Consequently, the court considers the motion for summary judgment only insofar as it relates to the claims brought on behalf of employees of BBC Coal and C & O Mining. All of the employees of BBC Coal and C & O Mining allege that their former employers owe them wages and "fringes," and that they are entitled under section 21-5-7 of the Wage Payment Act to collect those monies from Bluestone in its capacity as a prime contractor within the meaning of the Act.

By memorandum order entered on March 22, 1995, the court concluded that section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, preempted the claims made on behalf of BBC Coal employees and, on that basis, denied plaintiff's motion to remand. (Remand Ord. at 15-16.) The court did

---

[2]All references herein are to the amended complaint filed by plaintiffs on November 15, 1993, in the Circuit Court of Kanawha County, West Virginia.

2

not at that time resolve other preemption issues raised by Bluestone or decide the merits of Bluestone federal preemption defenses. (Id. at 16 n.9.) Those matters are now addressed.

II.

A. Claims of C & O Mining Employees.

The complaint identifies ten former employees of C & O Coal who seek unpaid wages and unidentified fringe benefits claimed to be owing to them at the time they were laid off. The parties agree that C & O paid wages during the relevant time period, (Stip. ¶ 16), but it appears that during the last six months of their employment, C & O employees did not receive fringe benefits and, perhaps, wages, at the rate required by the collective bargaining agreement then in effect, that being the 1988 National Bituminous Coal Wage Agreement, (Stip. ¶ 17; Def.'s Supp. Mem. at 4.) Rather, C & O Coal negotiated a separate contract with its employees and paid them a lower rate. (Stip. ¶ 7; Def.'s Supp. Mem. at 4.)

Unfair labor practice charges were filed against C & O, resulting in a National Labor Relations Board (NLRB) award against C & O for "net backpay (fringe benefits) and medical benefits totaling $18,529.88." (Stip. ¶¶ 4, 5 & 9.) Enforcement

3

of the award was upheld by the Fourth Circuit Court of Appeals on September 22, 1992. (Stip. ¶ 10.) The court has not been advised of efforts to collect the award from C & O Coal or other responsible parties. Similarly, the parties have not informed the court as to whether the NLRB addressed and/or decided a claim for unpaid wages. Nor have the parties indicated whether the NLRB award covers fringe benefit claims beyond those made here, which claims on behalf of C & O Coal employees total $16,217.66, some twenty-three hundred dollars less than the amount awarded by the NLRB.

With respect to the claims of C & O employees, Bluestone contends that it can be liable only as a successor to the unfair labor practices of C & O Coal because otherwise, by paying wages and benefits, albeit at a rate determined inadequate by the NLRB, C & O Coal fulfilled its obligations under the Wage Payment Act. Thus, Bluestone asserts, the claim against it for wages and benefits allegedly due employees of C & O Coal is preempted by federal labor law governing successor liability for unfair labor practices. The assertion is made without citation to authority and without identification of the pre-emption principles supporting the proposition stated.

Although Bluestone does not so state, it may be that its argument that it has met its obligations under the Wage Payment Act is premised on that portion of the Act which provides

4

that nothing contained in the Act "shall require fringe benefits to be calculated contrary to any agreement between an employer and his employees which does not contradict the provisions of this article." § 21-5-1(c). However, other portions of the Wage Payment Act require that with respect to laid-off employees, the employer must "pay in full . . . wages earned," with the term "wages" defined to include "then accrued fringe benefits capable of calculation and payable directly to an employee." W. Va. Code §§ 21-5-1, 21-5-4(d). If the employer fails to pay in full, a prime contractor is liable for the "payment of wages and fringe benefits . . . to the extent that the employer of such employee fails to pay such wages and fringe benefits." § 21-5-7. Acceptance of a partial payment of wages does not constitute a release as to the balance of the employee's claim. § 21-5-10.

With respect to the employees of C & O Mining, the NLRB calculated the amount of fringe benefits owed under what it determined to be the effective collective bargaining agreement. Its findings as to the amounts owed are entitled to preclusive effect under the doctrine of collateral estoppel. The issue of the amount owed was the same as the one presented here, there was a final judgment on the merits, and there was sufficient identity of the parties. See e.g., Moore v. Sun Lumber Co., 276 S.E.2d 797, 801 (W. Va. 1981). Consequently, the only remaining issue

with respect to the claims of the C & O Mining employees is whether they are entitled, under the Wage Payment Act, to collect the NLRB awards from Bluestone to the extent that they have not been collected from C & O Mining, or other responsible parties.

Bluestone's argument that federal labor law preempts plaintiff's Wage Payment Act claim on behalf of the employees of C & O Mining is not persuasive. Section 301 of the LMRA does not preempt state law causes of action which create a right independent of a collective bargaining agreement and which can be resolved without interpretation of the agreement. The Wage Payment Act grants employees a non-negotiable right to collect unpaid wages and fringe benefits from prime contractors. (Remand Order at 13-14). Ascertaining the amount of fringe benefits due to the employees of C & O Mining does not require interpretation of the collective bargaining agreement inasmuch as the amount due has been finally determined by the NLRB. Section 301 accordingly does not preempt plaintiff's claim against Bluestone for collection of the fringe benefits claimed on behalf of employees of C & O Mining to the extent that the NLRB has determined the amounts due.

Bluestone's motion for summary judgment will be denied to the extent that it seeks to avoid payment to the employees of C & O Mining the unpaid amounts of fringe benefits determined by the NLRB to be owing to them. However, inasmuch as the court is

6

unable to determine what portion of the NLRB award in the total amount of $18,529.88 is for fringe benefits, as opposed to medical benefits, the parties will be directed to stipulate, to the extent possible, the amount of fringe benefits the NLRB awarded each plaintiff.[3]

With respect to plaintiff's claim for unpaid wages on behalf of the employees of C & O Mining, the court is not provided with any information as to how the amounts claimed are calculated. Nor have the parties addressed the critical questions of whether the NLRB determined that wages, if any, are owed, or, if the NLRB did not address that issue, whether the determination can be made by this court by mere reference to a collective bargaining agreement for calculation of the amounts due. Bluestone's motion for summary judgment with respect to plaintiff's claim for unpaid wages on behalf of the employees of C & O Mining must accordingly also be denied.

---

[3]Bluestone relied on ERISA preemption when it sought summary judgment on the basis of deemed admissions but did not address that issue in its supplemental submissions. Consequently, the court does not undertake to determine whether any portion of the fringe benefits awarded by the NLRB are benefits due under an employee welfare benefit plan. It is noted, however, that the NLRB awarded both fringe benefits and medical benefits and that the total award exceeds the amount of the fringe benefits claimed in this action. The discrepancy in the figures is not explained to the court, although it may be that the award of medical benefits accounts for the difference.

B.  **Claims of BBC Coal Employees**.

Plaintiff alleges that four former employees of BBC Coal are entitled to recover from Bluestone for unpaid wages and unidentified fringe benefits.  Wages are sought for the period of January 14, 1989, through December 15, 1990.  (Stip. ¶ 15.)  The fringe benefits are identified as being for "regular vacation, graduated vacation, personal leave, floating vacation, and clothing allowance for the years 1989 and 1990."  (Id.)  Bluestone disputes plaintiff's contention that the BBC employees are entitled to graduated vacation pay.  (Id.)

BBC Coal was a signatory to the 1984 National Bituminous Coal Wage Agreement.  (Stip. ¶ 13.)  On February 10, 1988, BBC Coal and the union representing its employees, entered into a 1987 Interim Agreement.  (Attach. Def.'s Supp. Mem.)  The 1987 Interim Agreement provided, in part, that the parties would be bound by and would execute the successor agreement to the 1984 Wage Agreement upon its ratification.  (Id. ¶¶ 2-3.)  For any period between February 1, 1988, and the effective date of a successor wage agreement, the parties agreed to abide by the terms of the 1984 Wage Agreement.  (Id. ¶ 4(a).)  However, thirty days after execution of a successor agreement, BBC Coal was obligated to make retroactive payments to its employees, calculated in accordance with the provisions of the successor agreement, in such a manner that the wages and benefits contained in

8

the successor agreement would operate as though fully applicable retroactively to February 1, 1988. (Id. ¶ 4(b).) The retroactive payments were payable only for periods that the employees did not strike. (Id.) The 1987 Interim Agreement, by its terms, expired at 11:59 p.m. on January 31, 1989, if no successor agreement had been negotiated by then. (Id. ¶ 5.) Subsequent to the execution of the 1987 Interim Agreement, at a date not provided to the court, a successor agreement, the 1988 Wage Agreement, was negotiated. BBC Coal never signed the 1988 Wage Agreement, (Stip. ¶ 14), and apparently continued, through December 15, 1990, to pay wages and fringe benefits at the lower 1984 Wage Agreement rates, (see Def.'s Supp. Mem. at 6.)

Plaintiff claims that the employees were entitled instead to wages and fringe benefits at the rates specified in the 1988 Wage Agreement for the period January 14, 1989, two weeks before the 1987 Interim Agreement expired by its terms, and December 15, 1990. For its part, Bluestone maintains that plaintiff can establish the entitlement to wages and fringe benefits from BBC Coal, and thus, Bluestone, at the 1988 Wage Agreement rates only by showing that BBC Coal breached the 1987 Interim Agreement or that BBC Coal committed an unfair labor practice. In either event, says Bluestone, the claims on behalf of BBC Coal are preempted by federal labor law, which does not provide plaintiff with a cause of action against it.

In ruling on plaintiff's motion to remand, the court concluded that resolution of the claims brought on behalf of BBC Coal employees could not be accomplished by mere reference to a collective bargaining agreement for computation of the amounts owed and that the claims were preempted by section 301 of the LMRA. (Remand Ord. at 14-16.) Implicit in the court's decision was the appreciation that in order to ascertain that the BBC Coal employees are entitled to wages and fringe benefits at the 1988 Wage Agreement rates, it would be necessary to determine that BBC Coal violated the 1987 Interim Agreement,[4] a process which would, of necessity, require interpretation of the agreement. <u>International Union, UMWA v. Covenant Coal</u>, 977 F.2d 895, 899 (4th Cir. 1992) ("Only by interpreting a contract can a court determine whether the contract has been breached.")

Suits based on the violation of a collective bargaining agreement are section 301 suits. <u>Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n Machinists & Aerospace Workers</u>, 390 U.S. 557 (1968); <u>Marion v. Virginia Elec. & Power Co.</u>, 52 F.3d 86, 88 (4th

---

[4]The court recognized, alternatively, that it might be shown that BBC Coal was obligated to pay at the 1988 Wage Agreement rates because it engaged in an unfair labor practice. (Remand Ord. at 15-16, n.8.) However, the court also noted that only the NLRB has jurisdiction to hear an unfair labor practice claim. (<u>Id.</u>) (citing <u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236 (1959)). Consequently, plaintiff may not here establish that BBC Coal, and thus, Bluestone, owed wages and fringe benefits at the 1988 Wage Agreement rates because BBC Coal committed an unfair labor practice.

Cir. 1995). Thus, where a state law cause of action requires, as one of its elements, a determination that a collective bargaining agreement has been breached, the state claim is preempted by section 301. <u>Covenant Coal</u>, 977 F.2d at 899. Section 301 suits alleging violation of a collective bargaining agreement are maintainable only against parties to the collective bargaining agreement. <u>Id.</u> at 898-99, <u>see</u> <u>also</u> <u>Jackson v. Kimel</u>, 992 F.2d 1318, 1325 & n.4 (4th Cir. 1993); <u>Sine v. Local No. 992, Int'l Bhd. of Teamsters</u>, 730 F.2d 965, 966 (4th Cir. 1984).

On the basis of the cited authority, it is seen that insofar as plaintiff seeks to utilize the Wage Payment Act to recover wages and fringe benefits allegedly due employees of BBC Coal, the Act is preempted by section 301 as one requiring proof of BBC Coal's breach of a collective bargaining agreement. Moreover, it is seen that under section 301, the claim cannot be maintained against Bluestone, a nonparty to the 1987 Interim Agreement. Bluestone is accordingly entitled to summary judgment in its favor insofar as plaintiff seeks to recover from it wages and fringe benefits allegedly due to the employees of BBC Coal.

III.

For the reasons stated, it is **ORDERED** that:

11

1. The motion of defendant Bluestone Coal Corporation for summary judgment be, and it hereby is, denied in part and granted in part. The motion is granted insofar as it is directed to the claims brought on behalf of the four employees of BBC Coal Company, Inc., and denied insofar as it is direct to the claims brought on behalf of the ten employees of C & O Mining.

2. By September 22, 1995, the parties, consistent with the court's ruling herein on the issue of the fringe benefits payable to the employees of C & O Mining, shall, to the extent possible, file a stipulation identifying the fringe benefits awarded each C & O Mining employee by the National Labor Relations Board in the award upheld by the Fourth Circuit Court of Appeals on September 22, 1992, and advising the court on whether the National Labor Relations Board determined that additional wages are owed to those employees.

3. Counsel for the parties appear on October 4, 1995, at 1:15 p.m., at a conference to be conducted for the purpose of determining how to proceed on all claims not then resolved by this order or by agreement of the parties.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED:   August 25, 1995

JOHN T. COPENHAVER, JR.
United States District Judge

13